**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA ALEXANDRIA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ITZHAK LOZ,<br>(a/k/a Ari, a/k/a Avi),<br>RONEN FAKIRO,<br>BOAZ BOROHOV,<br>OFRA BOROHOV,<br>ARKADIY BANGIYEV,<br>(a/k/a Alex),<br>EDUARD BANGIYEV,<br>(a/k/a Eddie),<br>JOHNNY LEE,<br>(a/k/a Ramel, a/k/a Ra, a/k/a Jason Carter),<br>TARELL JOHNSON,<br>(a/k/a Nu Nu, a/k/a Nu),<br>CRAIG JOHSNON,<br>(a/k/a Uncle Bill),<br>SHANNON SMITH,<br>FREDERICK BARRETT,<br>RAMEL EPPS,<br>BRATTIE GUERRA,<br><br>Defendants. | **EXHIBITS UNDER SEAL**<br>**(Pursuant to May 27, 2014 Order)**<br><br>Criminal No. 1:14CR206<br><br>The Hon. Liam O'Grady<br>Trial Date: January 12, 2015 |

**DEFENDANT ITZHAK LOZ'S MEMORANDUM IN SUPPORT OF INITIAL MOTION FOR SUPPRESSION OF EVIDENCE FROM SEARCHES OF A STORAGE UNIT AND WAREHOUSE**

Itzhak Loz, through undersigned counsel, hereby submits this Memorandum in Support of his Motion for Suppression of Evidence from the searches of a storage unit and warehouse. The affidavits in support of the search warrants for Storage Unit 2068 located in the Self-Storage Center in New York (hereinafter "storage unit") and a warehouse located at 620 Deer Road (hereinafter, "warehouse"), were based on information acquired through wiretaps on Co-

Defendants Eduard Bangiyev and Arkadiy Bangiyev's telephones,[1] which do not provide sufficient probable cause to sustain the legality of the wiretaps. As such, all evidence derived therefrom, which includes any evidence seized from the storage unit and warehouse, pursuant to Title 18 U.S.C. §2518(10) and the fruit of the poisonous tree doctrine, must be suppressed for the reasons stated herein.

## I. FACTUAL BACKGROUND

This case involves numerous wiretap orders and extensions, expanding from June 2013 through April 2014. The wiretap orders specifically covered the telephones of Tarell Johnson, Johnny Lee, Eduard Bangiyev, and Arkadiy Bangiyev. During the course of those interceptions of Eduard and Arkadiy Bangiyev, Mr. Loz's calls were also intercepted and used as the basis for search and seizure warrants for the storage unit and warehouse. Those illegal calls were also the bases for a tracking warrant and pen register and trap/trace.[2] The warrants, discussed in more detail below demonstrate that each warrant was supported by Affidavits using information gathered through the wiretap orders. The Affidavits supporting the wiretap orders do not mention Mr. Loz by name until the February 5, 2014 Affidavit in support of the Extension of wiretaps for the Eduard and Arkadiy Bangiyev.[3] Agents concluded that the conversations between Mr. Loz and Eduard and Arkadiy Bangiyev involved discussions of counterfeit currency and thereby added Mr. Loz as a target of their investigation. There is no evidence that the

[1] Undersigned counsel has simultaneously filed a motion to extend the deadlines set for pretrial motions. Mr. Loz submits this motion to suppress to preserve his rights/arguments. Mr. Loz respectfully requests the Court grant his motion to extend the deadlines, or in the alternative allow him to supplement this motion with additional information. Additionally, Mr. Loz joins in the Motion to Suppress submitted by Eduard Bangiyev and Arkadiy Bangiyev.

[2] The Government just provided (two days ago) the Orders for the pen registers and trap/trace data on October 29, 2014, which also forms the basis for Mr. Loz's request for additional time to supplement his motion to suppress.

[3] The Government produced redacted Affidavits. Therefore, this is the earliest point at which the defense understands that the Affiant refers to Mr. Loz. Mr. Loz does hereby join in the motion filed by Arkadiy Bangiyev requesting that the Court compel the government to produce unredacted copies of the Applications and supporting Affidavits.

government had any independent information, other than the illegally obtained information from the wiretaps of which to base its investigation into Mr. Loz. In fact the information contained in search warrant Affidavits for the storage unit and the warehouse are copied verbatim from the language in the Affidavit of Agent Gaab in support of the wiretap applications.

The warehouse, purchased in the name of Ronen Fakiro and Itzhak Loz, was located at 620 Deer Road, Suite #18, Cherry Hill, New Jersey. On May 27, 2014, Jenny Contardi, a Special Agent of the United States Secret Service ("USSS"), swore and subscribed an affidavit in support of the search and seizure warrant for the warehouse. (*See* May 27, 2014, Affidavit in Support of Search and Seizure, D.N.J. 14-MJ-2026., attached hereto as Ex. 1.)

The following day on May 28, 2014, Richard L. Evans, a Special Agent of the USSS, swore and subscribed an affidavit in support of a search and seizure warrant for Storage Unit 2068, located inside of Self-Storage Center/Storage Post, 250 Maple Avenue, Rockville Centre, New York 11570. (*See* May 28, 2014, Affidavit in Support of Search and Seizure Warrant ("Storage Aff."), E.D.N.Y. MJ 14-0496, attached hereto as Ex. 2.)

## II. LEGAL STANDARD

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "To demonstrate probable cause to search premises, an affidavit must set forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *United States v. Laws*, 808 F.2d 92, 94 (D.C. Cir. 1986). "To determine whether a search warrant is supported by probable cause, a flexible totality-of-the-circumstances standard is employed." *Illinois v. Gates*, 462 U.S. 213, 233 (1983). In reviewing whether a warrant was supported by probable cause, the Court may only look to the information that was originally presented to the issuing judge. *United*

*States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). Further, "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" is inadequate. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). An agent's assertions that he "has cause to suspect and does believe" a particular offense is occurring, or even that an affiant has "received reliable information from a credible person and do believe" that particular evidence will be found in a particular place, is not enough on its own to establish probable cause. *Id.* Instead, facts "must be presented to the [issuing judge] to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.*

"When police obtain evidence by way of an unlawful search, the exclusionary rule may require exclusion of that evidence in some circumstances." *United States v. Glover*, 681 F.3d 411 (D.C. Cir. 2012). The exclusionary rules has been modified so as not to bar from admission evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984). The good-faith exception is inapposite in four situations, two of which are relevant in this case: "1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; and…..[2)] where the affidavit was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis to determine the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (*citing Leon*, 468 U.S. at 923).

Additionally, 18 U.S.C. § 2518(10) provides a statutory remedy for when information is illegally obtained via wiretap; the unlawful interception of communications justifies suppressing

wiretap evidence, and any evidence derived therefrom. *Id*. (*See generally Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (evidence and witnesses discovered as a result of a search in violation of the *Fourth Amendment* must be excluded from evidence). The Government would not have known to begin an investigation and physical surveillance on Mr. Loz had it not been for the conversations that were illegally intercepted between he and Eduard and Arkadiy Bangiyev, which were intercepted based on affidavits lacking in probable cause.[4] In addition to the lack of probable cause, the Affidavits further demonstrate that: 1) none of the unindicted co-conspirators knew of Mr. Loz; 2) that Mr. Loz was not involved in any of the controlled purchases set up by the Agents, and 3) that there is no other evidence connecting Mr. Loz to the alleged conspiracy except calls to Eduard and Arkadiy Bangiyev.

## III. ARGUMENT

### A. Mr. Loz is an "aggrieved person" under Title III

A persons privacy rights are directly affected in instances in which their phone calls are being recorded by the Government without their knowledge. Title III Wiretaps are carefully regulated and scrutinized, and the results of a wiretap must be suppressed and evidence derived from the wiretap must be suppressed, unless the wiretap's application and execution satisfies the Fourth Amendment. *See Desist v. United States*, 394 U.S. 244, 246 (1968) and 18 U.S.C. §2518(10)(a). Further, "in order to have standing, a defendant must establish that he has a legitimate expectation of privacy that was violated by the Government's electronic surveillance." *United States v. Rodriguez*, No. 08 CR 1311, 2009 WL 2569116, at *4 (S.D.N.Y. Aug. 20, 2009) (citing *United States v. Bianco*, 998 F.2d 1112, 1122 (2d Cir. 1993)). Under Title III, only an

[4] Eduard and Arkadiy Bangiyev have both filed motions to suppress the wiretap interceptions which, as discussed below, Mr. Loz has adopted. Those motions lay out in detail the fact that those wiretap affidavits were not supported by probable cause, providing yet another reason why the information obtained through the search of the storage shed and warehouse was not supported by probable cause and should be suppressed.

"aggrieved person" may seek to suppress oral communications intercepted by the Government. *See* 18 U.S.C. § 2518(10)(a). Title III defines an "aggrieved person" as "a person who was a party to any intercepted wire, oral or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

The Government began intercepting calls on Eduard Bangiyev's phone on October 3, 2013 and subsequently on Arkadiy Bangiyev's phone in November 2013. The first mention of Mr. Loz's calls being intercepted due to conversations with either Eduard or Arkadiy Bangiyev was in November 2013. (*See* Feb. 5, 2014 Affidavit, at ¶14(u), attached hereto as Ex. 3.) Due to the fact that the wiretaps intercepted conversations made to and from Mr. Loz, and for which such evidence was then used as the basis to search the warehouse and storage unit, Mr. Loz is an "aggrieved person" for the purposes of 18 U.S.C. § 2518(1)(a) and has standing to seek suppression of the illegal Title III wiretaps and all evidence that is derived from such wiretaps.

**B. The Affidavits Lack Probable Cause and the Government did not Satisfy the Necessity Requirement for Obtaining the October 3, 2013 Wiretap Order**

Mr. Loz respectfully adopts the motions of Eduard Bangiyev and Arkadiy Bangiyev as those motions relate to the suppression of the Title III wiretaps. The Affidavit for October 3, 2013 wiretap failed to set forth sufficient facts to establish probable cause and the Government failed to meet the necessity requirements of 18 U.S.C. §2518(1)(c) and (3)(c). Based on the fact that the initial wiretap order lacked facts to support probable cause, all subsequent wiretap orders and extensions, including the November 2013 wiretap for Arkadiy Bangiyev's telephone which was based on information obtained as a result of the initial wiretap, and all search and seizure warrants based on information derived from the initial wiretap order must be suppressed. (*See generally Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

Without the wiretap orders on Eduard and Arkadiy Bangiyev's telephones, the Government would not have known to conduct physical surveillance on Mr. Loz, subpoenaed any pen register data, applied for and procured tracking warrants for his vehicle, or applied for search and seizure warrants for the warehouse or storage unit. For example, the October 3, 2013 and November 1, 2013 Applications and supporting Affidavits do not even name Mr. Loz.[5] A Title III wiretap order that is procured without probable cause is a violation of Mr. Loz's Fourth Amendment rights due to the fact that his private conversations were intercepted and derivatively used to procure warrants against Mr. Loz.

### C. The Search of the Warehouse and Storage Unit should be Suppressed as the Fruit of the Poisonous tree

The common thread between each of the search and seizure warrants for the warehouse and storage unit are the conversations intercepted over the wiretaps. The Affidavits supporting the search and seizure of the warehouse or storage unit do not contain any information showing that the Agent had any knowledge of Mr. Loz, independent of the conversations improperly intercepted by the investigative agents. It is without question that if Affidavits supporting the search and seizure warrants of the warehouse and storage unit are based on information that is obtained through a Wiretap application that violates the Fourth Amendment, then any evidence derived from that Wiretap order should be suppressed.[6] *See generally United States v. Elie*, 111 F.3d 1135, 1140 (4th Cir. 1997) ("consequently, if the derivative evidence is discovery 'by

[5] The Government has not yet produced unredacted copies of the Affidavits supporting the wiretap Applications. Therefore, these arguments are based on the information that Mr. Loz is able to glean from the unredacted portions of the Affidavits that were produced in discovery.

[6] Mr. Loz adopts the Motion to Suppress filed on behalf of Eduard and Arkadiy Bangiyev. The information contained in those motions describe the genuine lack of probable cause to support the Affidavits. Further, Agent Gaab does not give any indication that he knew of Mr. Loz or that the investigation of Mr. Loz, was independent of the information that was gathered as a result of the Wiretaps.

means sufficiently distinguishable [from the illegality] to be purged of the primary taint (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

In support of the search of the warehouse, the Affiant states that she relied on conversations that were recovered during interceptions of Title III Wiretaps on the phones of Eduard and Arkadiy Bangiyev.[7] (*See* Ex. 1 at ¶¶12-16 and 18). Specifically, the Affidavit noted that the agents "believed"[8] that on January 12, 2014, Mr. Loz told Arkadiy Bangiyev that he would be in the United States on January 14, 2014 to work on the counterfeiting machine and pick up money from him. (*See id*. at ¶18.) The Affidavit further noted that Mr. Loz indicated that he would have his "guys" start gluing. (*Id*.) The Affiant "believed" this to mean that the individuals would start gluing pieces of counterfeit money together as part of the printing process. (*Id*.) This language is taken directly from the Affidavits supporting the wiretap applications. (*See* Ex. 3 at ¶143) From these conversations, agents conducted further investigation and sought out an application for the search and seizure warrant of the warehouse. Additionally, after the agents determined Mr. Loz's identity and summarily concluded that he was involved in the manufacture of counterfeit currency, they began conducting physical surveillance and further used the information to support the search and seizure warrant for the warehouse. Therefore, the entire investigation into Mr. Loz, can be traced to the intercepted wiretap conversations. The Government has provided no other evidence to indicate that Mr. Loz was a target of their investigation prior to or independent of the wiretap interceptions. Because the wiretaps were procured in violation of the Fourth Amendment, without probable cause or

---

[7] Itzhak Loz did not have a Title III Wiretap on his phone. However, the Government has intercepted calls between he and Eduard and/or Arkadiy Bangiyev, and used this information as the basis for the search and seizure warrants that were issued.

[8] As stated in the Motion to Suppress of the Eduard Bangiyev, Agent Gaab continuously based his conclusions on his personal "beliefs" of what was being discussed on the various calls with Mr. Loz. For example, in approximately, fifteen listed calls in the March 11, 2014 Affidavit of Agent Gaab, he states at least 25 times, his "beliefs" of what the conversation with Mr. Loz involved.

necessity of using such an intrusive measure, the wiretap orders and evidence derived from them should be suppressed.

The Affidavit in support of the search and seizure warrant for the storage unit states that agents conducting surveillance of the warehouse on May 27, 2014 observed Mr. Loz and Mr. Fakiro leaving the warehouse with two cardboard boxes. (*See* Storage Aff. at ¶9, attached as Ex. 2.) The agent stated that the defendants drove to their hotel and then to the storage unit where they dropped off a cardboard box and a suitcase. (*Id*.) The Affidavit is further supported by statements of co-defendants Boaz and Ofra Borohov who were arrested during the search of the warehouse, a few hours before the search warrant for the storage unit was signed. (*See* Ex. 2 at ¶¶11-12.) The only reason the surveillance on the warehouse was conducted and the Government applied for the tracking warrants on the vehicles is because of the conversations that they obtained through the use of an illegal wiretap.

Beyond being based on information obtained through a wiretap that was not supported by probable cause, the search and seizure warrant for the storage unit is also misleading. The Agent states first that there is an ongoing investigation into counterfeit currency that dates back to 1999. Then the agent states that there was physical surveillance of Mr. Loz at the warehouse. Notably, the missing detail is how the ongoing investigation of counterfeit currency is tied to Mr. Loz. There is no information listed in the affidavit to state that the Government had any information that Mr. Loz has been involved in counterfeit currency since 1999. Therefore, this seems to be nothing more than background information in an ongoing Government investigation unrelated to Mr. Loz.

If you remove the background information and focus on the physical surveillance of Mr. Loz at the warehouse, then the issuing judge is only left with two men moving items from their

warehouse to a storage unit. There is nothing illegal about those basic movements, or sufficient to rise to the level of probable cause to issue a search warrant of the storage unit.

The affidavit further relies on statements of Boaz and Ofra Borohov, who were present in the warehouse at the time of the Government's search. The only way the Government was able to obtain these statements is because the Borohovs were on the premises when the search and seizure warrant for the warehouse was executed. However, the search and seizure warrant for the warehouse was issued based on the Affidavit that was submitted and contained information derived from the illegal wiretap. Therefore, it is clear that all evidence obtained at the search of the warehouse flows directly from the wiretap that was not based on probable cause and, as such, must be suppressed as the fruit of the illegal intercept. (*See generally Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

## IV. CONCLUSION

Mr. Loz respectfully requests that the court suppress the Title III Wiretaps and the search of the warehouse and storage unit that all stem from the communications that were illegally recorded on the wiretaps. Because the wiretaps were procured in violation of the Fourth Amendment, any derivative evidence that was gathered as a result of the wiretaps should also be suppressed.

In the alternative, Mr. Loz respectfully requests that the Court allow him to supplement this motion after he has had additional time to consult with a potential opinion witness and review the newly produced discovery in this matter. On October 29, 2014, the government provided the pen register orders and trap and trace data for the first time. And as we noted to the Court previously our potential opinion witness needed time to review the wiretap information and consult with counsel. Additional time is also needed to secure and review some of the

documents that were recently produced in discovery. As such we seek additional time to supplement this motion and those of Eduard and Arkadiy Bangiyev to determine if a *Franks* hearing is warranted in this case.

Dated: October 31, 2014

Respectfully submitted,

ITZHAK LOZ
By Counsel

/s/ Edsel Jay Guydon

Edsel Jay Guydon (VA Bar No. 37021)
William R. Martin (admitted *pro hac vice*)
**MARTIN & GITNER PLLC**
2121 K Street, NW, Suite 850
Washington, DC 20037
Tel. (202) 331-2121
Fax. (202) 331-5086
Edsel.guydon@martingitnerlaw.com
*Attorney for Defendant Itzhak Loz*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

/s/ Edsel Jay Guydon
Edsel Jay Guydon (VA Bar No. 37021)
**MARTIN & GITNER PLLC**
2121 K Street, NW, Suite 850
Washington, DC 20037
Tel. (202) 331-2121
Fax. (202) 331-5086
Edsel.guydon@martingitnerlaw.com
*Attorney for Defendant Itzhak Loz*